Filing # 236289078 E-Filed 11/20/2025 05:54:47 PM

RECEIVED

DEC 1 0 2025

BY LEGAL SERVICES

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA

L.D., on behalf of D.D., a minor

**502025CA011907XXXAMB AK**

CASE NO. _____

_____
                    Plaintiff,

**vs.**

Palm Beach County School Board

_____
                    Defendant.

### SUMMONS
**(20 Day Corporate Service)**

TO DEFENDANT(S):                        **ALTERNATE ADDRESS:**

Palm Beach County School  Board
33000 Forest Hill Blvd,
West Palm Beach, Florida 33406

_____     _____

IMPORTANT

A LAWSUIT HAS BEEN FILED AGAINST YOU.  YOU HAVE 20 CALENDAR DAYS AFTER
THIS SUMMONS IS SERVED ON YOU TO FILE A WRITTEN RESPONSE TO THE
ATTACHED COMPLAINT WITH THE CLERK OF THIS COURT.  A PHONE CALL WILL NOT
PROTECT YOU.  YOUR WRITTEN RESPONSE, INCLUDING THE CASE NUMBER GIVEN
ABOVE AND THE NAMES OF THE PARTIES, MUST BE FILED IF YOU WANT THE COURT
TO HEAR YOUR SIDE OF THE CASE.  IF YOU DO NOT FILE YOUR RESPONSE ON TIME,
YOU MAY LOSE THE CASE, AND YOUR WAGES, MONEY, AND PROPERTY MAY
THEREAFTER BE TAKEN WITHOUT FURTHER WARNING FROM THE COURT.  THERE
ARE OTHER LEGAL REQUIREMENTS.  YOU MAY WANT TO CALL AN ATTORNEY
RIGHT AWAY.  IF YOU DO NOT KNOW AN ATTORNEY, YOU MAY CALL AN ATTORNEY
REFERRAL SERVICE OR A LEGAL AID OFFICE (LISTED IN THE PHONE BOOK).

IF YOU CHOOSE TO FILE A WRITTEN RESPONSE YOURSELF, AT THE SAME TIME YOU
FILE YOUR WRITTEN RESPONSE TO THE COURT YOU MUST ALSO MAIL OR TAKE A
COPY OF YOUR WRITTEN RESPONSE TO THE ΑPLAINTIFF OR PLAINTIFF(S) ATTORNEY
NAMED BELOW.

Stephanie Langer, Esq., Langer Law, P.A., 15715 S. Dixie Highway, Suite 205, Palmetto Bay, Florida 33157

THE STATE OF FLORIDA:
TO EACH SHERIFF OF THE STATE: YOU ARE COMMANDED TO SERVE THIS SUMMONS
AND A COPY OF THE COMPLAINT IN THIS LAWSUIT ON THE ABOVE NAMED
DEFENDANT(S).

DATED: **Nov 25 2025**

**Clerk of the Circuit Court & Comptroller,
Palm Beach County**

By: _____

DEPUTY CLERK   **JOSIE LUCCE**

SEE REVERSE SIDE - VEASE AL REVES - VOIR DE L=AUTRE COTE DE

Summons (Personal Service on a Natural Person) Page **2** of 6

<u>IMPORTANTE</u>

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

<u>IMPORTANT</u>

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecu-tifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egale-ment, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

SEE REVERSE SIDE - VEASE AL REVES - VOIR DE L=AUTRE COTE DE

This notice is provided pursuant to Administrative Order No. 2.207-1/15

"If you are a **person with a disability** who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact William Hutchings, Jr., Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway, West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."

"Si usted es una **persona minusválida** que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con William Hutchings, Jr., 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711."

"Si ou se yon **moun ki enfim** ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte William Hutchings, Jr., kòòdonatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telefòn li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711."

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION: "AK"
CASE NO.: 502025CA011907XXXAMB

L D,
     Plaintiff/Petitioner
vs.
PALM BEACH COUNTY SCHOOL BOARD,
     Defendant/Respondent.
_____/

### UNIFORM DIFFERENTIATED CASE MANAGEMENT ORDER
### AND ORDER SETTING TRIAL
(DCMGJT)

**THIS MATTER** is a Circuit Civil case calling for a jury trial. Pursuant to Fla. R. Gen. Prac. & Jud. Admin. 2.250(a)(1)(B) and 2.545(b), and Fifteenth Judicial Circuit Administrative Order 3.110 (as amended), **Plaintiff/Petitioner is directed to serve this Order upon each Defendant/Respondent with the initial Complaint/Petition and Summons**.

It is hereby **ORDERED AND ADJUDGED** that this case is designated to the **GENERAL TRACK** for time to disposition. The deadlines and procedures set forth in this Order will be strictly enforced unless changed by court order.

Consistent with the Professionalism Expectations of the Florida Supreme Court and the Florida Bar, the parties and counsel are expected to govern themselves at all times with a spirit of cooperation, professionalism and civility. They are expected to accommodate each other whenever reasonably possible and eliminate disputes by reasonable agreements. Self-Represented/*Pro Se* Litigants (i.e., those without counsel) are held to the same procedural and legal obligations as are imposed upon counsel.

I. **SCHEDULING**

   A. **Calendar Call**

      **YOU MUST APPEAR FOR A MANDATORY CALENDAR CALL on August 13, 2027 at 9:00 am**. The parties must be ready to try the case by that date. The actual trial period begins on the docket associated with this Calendar Call date as provided in Divisional Instructions or by court order.

      Calendar Call may be conducted in person, via Zoom or by e-calendar. All parties are instructed to review the Court's Divisional Instructions for specific procedures at www.15thcircuit.com/divisions.

Case No. 50-2025-CA-011907-XXXA-MB

At the Calendar Call, the Court may conduct a final case management conference. Attorneys who appear for Calendar Call must be prepared on all pending matters and have authority to make representations to the Court and enter into binding agreements concerning motions, issues, and scheduling. These include issues raised by the parties' Pre-Trial Stipulation; trial procedures; jury selection procedures; jury instructions and objections; and the need for any special equipment, courtroom facilities, or interpreters. An appearing attorney must be prepared to advise the Court of all attorneys' availability for trial and future hearings as necessary.

**This Order serves as notice to the parties that failure to attend Calendar Call will result in an Order of Dismissal without prejudice, or entry of default, without further notice or hearing.** *See* **Fla. R. Civ. P. 1.200(j)(6).**

B. **Case Management Deadlines**

The following deadlines strictly apply unless otherwise modified by the Court:

| | EVENTS | COMPLETION DEADLINE |
|---|---|---|
| 1. | Service of Complaint | March 14, 2026; service under extension is only by court order. |
| 2. | Answer and/or initial motions/objections directed to the pleadings (i.e. to dismiss or strike) | 20 days after service |
| 3. | Initial Discovery Disclosures | 60 days after service |
| 4. | Amendment of pleadings/Adding parties | July 22, 2026 |
| 5. | Resolution of all motions/objections directed to the pleadings and pleadings closed | September 10, 2026 |
| 6. | Disclosure of Expert Witness(es) | January 25, 2027 |
| 7. | Disclosure of Rebuttal Experts | February 24, 2027 |
| 8. | Inspections, Expert Witness Depositions and Compulsory Examinations completed | May 15, 2027 |
| 9. | File Witness & Exhibit Lists | May 25, 2027 |
| 10. | Completion of Discovery relating to Summary Judgment and *Daubert* Motions | May 15, 2027 |
| 11. | File and Serve Motion(s) for Summary Judgment and *Daubert* Motions | May 25, 2027 |
| 12. | File Rebuttal Witness Lists | June 14, 2027 |
| 13. | Completion of All Discovery | July 4, 2027 |
| 14. | Pre-Trial Meet & Confer | July 14, 2027 |
| 15. | File all Pre-Trial Motions (i.e. Motions in Limine) | July 14, 2027 |
| 16. | Deadline for Mediation | August 3, 2027 |
| 17. | Deposition Designations | August 3, 2027 |
| 18. | File Joint Pre-Trial Stipulation | August 3, 2027 |

Case No. 50-2025-CA-011907-XXXA-MB

| 19. | Deadline to hear ALL Motions | August 8, 2027 |
|---|---|---|
| 20. | Jury Instructions and Verdict Form | August 10, 2027 |
| 21. | Calendar Call/Trial Ready Date | August 13, 2027 |
| 22. | Trial Period | Begins on the docket associated with the above Calendar Call date, as provided in Divisional Instructions or by court order. |

**Note: If the above deadlines fall on a weekend or holiday, please refer to Fla. R. Gen. Prac. & Jud. Admin. 2.514.**

The parties are expected to actively manage the case and to confer early and often to ensure compliance with the Florida Rules of Civil Procedure and this order in timely resolving this case. **The parties are encouraged to file, meet, and make disclosures prior to the deadlines imposed above, in order to ensure compliance with the Rules requiring timely disposition of cases**.

The Court may, at any time, modify this Order by entry of: 1) an Amended Trial Order, 2) an Amended Case Management Order; or 3) any other Order intended to establish a modified case resolution schedule, any of which shall supersede the deadlines set forth in this Order. The Court reserves the authority to expedite the trial setting and amend pretrial deadlines accordingly. The Court further retains its discretion to modify any provision herein.

C. **Motions**

Unless court approval is required to set a particular motion for hearing, the parties must expeditiously set all contested motions for hearing. All non-dispositive motions, including motions directed to the pleadings, must be scheduled for hearing within **five (5) days** of filing. Parties shall schedule the hearing for the first vacancy on the Court's docket when all parties are available. **Failure to schedule a hearing within five (5) days may result in the Court deeming the motion(s) abandoned without further notice or hearing**.

The moving party shall be the party responsible for securing the presence of a court reporter. The moving party shall advise all parties in writing in advance of the hearing or trial of the arrangements made, if any, for the presence of a court reporter, or shall advise all parties in advance of the hearing or trial that the moving party has chosen not to obtain a court reporter.

Before filing a non-dispositive motion, the movant must follow Rule 1.202 and Local Rule 4. Failure to comply with the requirements of Rule 1.202 and Local Rule 4 may result in sanctions against the non-compliant party.

The requirements of Rule 1.202 do not apply when the movant or the nonmovant is unrepresented by counsel *(pro se)*.

Case No. 50-2025-CA-011907-XXXA-MB

D. **Extensions, Modifications and Continuances**

**Extensions of Deadlines Other than Trial/Calendar Call: All motions to extend deadlines must be filed prior to the deadline**. Untimely motions will be denied absent compelling circumstances and a showing of good cause.

The parties must strictly follow Rule 1.200(e) and Administrative Order 3.110 (as amended) when filing motions for extension or modification. If the parties agree, and the extension will not prevent the case from being trial ready by the original Calendar Call date, the parties may file a motion and submit for the Court's consideration an agreed order or proposed Amended DCMO, as applicable under Rule 1.200(e)(1). The motion shall identify which deadlines are requested to be extended and the basis for the request. Each agreed order or Amended DCMO must contain agreed-upon dates for all remaining deadlines and confirm that the Calendar Call date remains as previously set. The Court will accept the amendment or direct the parties to set a DCM Conference. **Agreements to extend the dates for the filing of Summary Judgment and *Daubert* motions, and for completion of discovery, must be set for hearing, and the parties must be prepared to address how the proposed extension will not affect the Calendar Call date**.

**Motions to Continue Trial:** Motions to continue trial must strictly comply with Rule 1.460. **Motions to continue are disfavored and will rarely be granted and then only upon good cause shown. Successive continuances are highly disfavored. Lack of due diligence in preparing for trial is not grounds to continue the case**. Failure to timely complete discovery and/or file a motion for summary judgment shall not be grounds to continue the trial.

E. **DCM Conferences**

If any party is unable to meet the deadlines set forth in this Order for any reason, including unavailability of hearing time, the affected party must promptly set a DCM conference as described in Administrative Order 3.110 (as amended), identifying the hearing time requested and the pending motion(s). DCM conferences shall be scheduled through online scheduling (OLS) on either the Court's: 1) DCM - Case Management Conference docket; or 2) Uniform Motion Calendar, in accordance with Divisional Instructions.

II. **UNIFORM PRE-TRIAL PROCEDURE**

A. TIMELY SERVICE AND DEFAULTS

Parties must make reasonable efforts to ensure speedy service. Each return of service must be separately filed for each defendant. If service is not completed within ninety (90) days, an Order will be issued directing service by the **ONE-HUNDRED TWENTY (120) DAY DEADLINE**. Failure to comply will result in dismissal of the case or party for lack of service. Any motions to extend the deadline for service must specify why service could not have been effectuated, what is being done to effectuate service and request only that amount of additional time necessary.

Case No. 50-2025-CA-011907-XXXA-MB

If all defendants become defaulted, a Motion for Default Final Judgment along with supporting documentation must be filed within **thirty (30) days** of the last default and set for hearing at the next available hearing time.

B.  INITIAL DISCLOSURES

Within **sixty (60) days after service** on a defendant, and except as exempted by Rule 1.280(a)(2) or as ordered by the court, each party must, without awaiting a discovery request, provide to the other parties initial discovery disclosures in compliance with Rule 1.280(a), unless privileged or protected from disclosure.

C.  EXHIBITS AND WITNESSES

No later than **eighty (80) days before Calendar Call**, each party shall file and exchange lists of all trial exhibits, names, and addresses of all trial witnesses. Each party's witness list must include a brief description of the substance and scope of the testimony to be elicited from each witness. Both sides must cooperate in the scheduling of all witness depositions.

Each party's exhibit list shall include each exhibit separately numbered and identified. Generic or prospective designations are not allowed (e.g. insurer's file, documents to be produced, etc.). Each party shall provide for a reasonable time and place for the other parties to review and copy the exhibits.

D.  EXPERT WITNESS DISCLOSURES

In addition to the names and addresses of each expert retained to formulate an expert opinion, as well as any hybrid fact/expert witnesses, no later than **two-hundred (200) days before Calendar Call**, the parties must provide:

1.  The subject matter about which the expert will testify;
2.  The opinions to which the expert will testify;
3.  A summary of the grounds and facts for each opinion; and
4.  A copy of the expert's curriculum vitae.

**Each expert will be limited to testifying only about those matters which have been fully disclosed.**

Parties shall furnish opposing counsel with two (2) alternative dates of availability of all expert witnesses for the purpose of taking their deposition. All parties shall cooperate in the scheduling of expert depositions.

The parties shall also provide answers to standard form expert interrogatories. All reports or other data compiled by each disclosed expert which are intended to be used by the expert and/or referred to during his/her deposition testimony shall be provided electronically to all opposing parties at least 72 hours prior to the date of the

Case No. 50-2025-CA-011907-XXXA-MB

scheduled deposition.

**Rebuttal/Responsive Experts**

No later than **one-hundred seventy (170) days before Calendar Call**, the parties shall provide opposing counsel with a written list with the names and addresses of all rebuttal/responsive expert witnesses intended to be called at trial and only those rebuttal/responsive expert witnesses listed shall be permitted to testify. The parties shall also furnish opposing counsel with expert reports or summaries of all rebuttal/responsive expert witnesses' anticipated testimony to the same extent as the expert disclosure requirement above.

Within **thirty (30) days** following this disclosure, the parties shall make their rebuttal/responsive experts available for deposition. The experts' depositions may be conducted without further Court order.

E. REBUTTAL FACT WITNESSES AND EXHIBITS

No later than **sixty (60) days before Calendar Call**, the parties must file and exchange lists of names and addresses of all rebuttal fact witnesses and lists of any rebuttal exhibits.

F. ADDITIONAL EXHIBITS, WITNESSES OR OBJECTIONS

At trial, the parties will be strictly limited to exhibits and witnesses previously disclosed absent agreement of the parties or order of the Court upon good cause shown. A party desiring to use an exhibit or witness discovered after counsel have conferred must immediately furnish the Court and other counsel with a description of the exhibit or with the witness' name and address and the expected subject matter of the witness' testimony, together with the reason for the late discovery of the exhibit or witness. Failure to reserve objections constitutes a waiver. Use of the exhibit or witness may be allowed by the Court for good cause shown.

G. DEPOSITION DESIGNATIONS

No later than **ten (10) days prior to Calendar Call**, each party must serve deposition designations, or portions of depositions, each intends to offer as testimony. No later than **eight (8) days prior to Calendar Call**, each opposing party is to serve any counter (or "fairness") designations, together with objections to the depositions, or portions thereof, originally designated. No later than **five (5) days before Calendar Call**, each party must serve any objections to counter-designations served by an opposing party.

H. DISCOVERY COMPLETION

All discovery relating to Summary Judgment and *Daubert* motions must be

Case No. 50-2025-CA-011907-XXXA-MB

completed no later than **ninety (90) days prior to Calendar Call**.

All discovery must be completed no later than **forty (40) days prior to Calendar Call**.

Rulings as to admission on late discovery will be made on a case by case basis. Absent unforeseeable, exigent circumstances, the failure to complete discovery is not grounds for a continuance.

I.  COUNSEL MEETING AND PRE-TRIAL STIPULATION

Counsel or the parties, if not represented by counsel, shall meet in person at a mutually convenient time and place no later than **thirty (30) days before Calendar Call** to discuss settlement, simplify the issues, and stipulate to as many facts and issues as possible, and prepare a Pre-Trial Stipulation in accordance with this paragraph.

It shall be the duty of Plaintiff's counsel to see that the Pre-Trial Stipulation is drawn, executed by counsel for all parties, and filed with the Clerk no later than **ten (10) days prior to Calendar Call. UNILATERAL PRE-TRIAL STIPULATIONS ARE DISALLOWED, UNLESS APPROVED BY THE COURT AFTER NOTICE AND HEARING**. If a party does not receive a substantive response to a proposed Pre-Trial Stipulation after good faith effort, such party shall file a unilateral Pre-Trial Stipulation with a certification of all efforts that were made to confer with the opposing party. Counsel for all parties are charged with good faith cooperation in preparing the Pre-Trial Stipulation, and the parties shall make exhibits available for inspection and copying. Failure to cooperate in preparing the Pre-Trial Stipulation may result in striking pleadings, witnesses, or exhibits.

The Pre-Trial Stipulation must contain the following in separately numbered paragraphs:

1. Names and contact information of attorneys to try case.
2. A list of all pending motions requiring action by the Court. **Motions not listed are deemed abandoned or waived**.
3. A statement of estimated trial time, including the total number of trial days anticipated, and the time needed per side for (1) jury selection, (2) opening arguments, (3) each case in chief, and (4) closing arguments.
4. **Statement of the Facts:** A concise statement of the facts in an impartial, easily understandable manner which may be read to the jury.
5. **Statement Facts and Agreed Rules of Law:** A list of any stipulated facts requiring no proof at trial and any agreed rules of law.
6. **Statements of Disputed Law & Fact:** A statement of disputed issues of law and fact that are to be tried.
7. **Witness Lists:** Parties must attach their previously filed Witness Lists, including rebuttal or impeachment witnesses. If any party objects to any

Case No. 50-2025-CA-011907-XXXA-MB

witness, such objections must be stated in the Stipulation, setting forth the grounds with specificity. At trial, all parties will be strictly limited to witnesses properly and timely disclosed. Only those witnesses listed by NAME will be permitted to testify at trial.

8. **Exhibit Lists:** Parties must attach their previously filed Exhibit Lists. All exhibits to be offered in evidence at trial must have been made available to opposing counsel for examination. Only those exhibits listed may be offered in evidence. If any party objects to the introduction of any such exhibit, such objection must be stated in the Pre-Trial Stipulation, setting forth the grounds with specificity. Demonstrative exhibits (e.g. PowerPoints, charts, enlargements of exhibits) to be used at a Jury Trial must be displayed to all counsel before being shown to the jury. All exhibits must be pre-marked and numbered consistent with Clerk guidelines.

9. **Jury Instructions:** Counsel must identify all agreed-upon standard jury instructions and all special instructions. Any objections or disputed jury instructions must be attached and identified as to the party that proposed the instruction [indicated in redline/track changes]. Copies of all agreed-upon instructions or disputed instructions must be attached to the Stipulation as one document, redlined as necessary, along with copies of supporting statutory citations and/or case law.

10. **Verdict Forms:** The jury verdict form must be attached and designated as agreed to or disputed.

11. **Peremptory Challenges:** State the number of peremptory challenges for each party.

12. Other agreements or issues for trial, if any.

Failure to file a Joint Pre-Trial Stipulation as provided above may result in Court-imposed sanctions, including dismissal or default without further notice of the Court.

J. MOTIONS

**Summary Judgment and *Daubert* Motions** must be filed at least **eighty (80) days before Calendar Call**. The parties shall confer regarding summary judgment motions to ensure discovery necessary for those motions is completed in advance of their filing.

**ALL MOTIONS** (including dispositive motions and motions in limine), deposition objections, and expert challenges must be filed, served and heard at least **five (5) days before Calendar Call**.

K. PRE-MARKING EXHIBITS

Prior to trial, each party is to mark for identification all exhibits in accordance with the guidelines of the Clerk of Court. Instructions and templates may be found at: www.mypalmbeachclerk.com/departments/courts/evidence-guidelines/civil-evidence.

L. ENLARGED JURY PANELS

Local Rules require advance approval of the Chief Judge and Jury Office for jury panels exceeding 31 jurors. **To ensure enough jurors are available, requests for enlarged jury panels must be resolved at least six (6) months before Calendar Call**. Failure to timely request an enlarged panel may result in Court-ordered sanctions, including a limitation on peremptory challenges.

M. <u>INTERPRETERS</u>

Unless otherwise ordered by the Court, it shall be the responsibility of the party who needs the services of an interpreter, whether for a litigant or for a witness, to have a competent interpreter present in court.

N. <u>JURY INSTRUCTIONS AND VERDICT FORM</u>

A joint set of proposed jury instructions and a proposed verdict form must be provided to the court no less than **three (3) days before Calendar Call** in a printed form appropriate for submission to the jury and in Microsoft Word format.

If there is an objection to a proposed instruction, the instruction should be followed by the specific objection, a brief explanation, and a citation to legal authority. If an alternative or modified instruction is proposed, it should follow the instruction it is intended to replace.

O. <u>UNIQUE QUESTIONS OF LAW</u>

Prior to calendar call, counsel for the parties are directed to exchange and simultaneously submit to the Court appropriate memoranda with citations to legal authority in support of any unique legal questions that may reasonably be anticipated to arise during the trial.

III. **MEDIATION**

A. <u>MEDIATION REQUIRED</u>

1. All parties are required to participate in mediation.
2. The attendance of counsel who will try the case and representatives of each party with full authority to enter into a complete compromise and settlement is mandatory. If insurance is involved, an adjuster with authority up to the policy limits must attend.
3. At least one week prior to a scheduled mediation conference, all parties are to file with the mediator a brief, written summary of the case containing a list of issues as to each party.
4. All communications at the mediation conference are privileged consistent with Florida Statutes sections 44.102 and 90.408.
5. The mediator has no power to compel or enforce a settlement agreement. If a

settlement is reached, it is a responsibility of the attorneys or parties to reduce the agreement to writing and to comply with Florida Rule of Civil Procedure 1.730(b), unless waived.

B. <u>MEDIATION SCHEDULING</u>

**The Plaintiff's attorney is responsible for scheduling mediation**. The parties should agree on a mediator. If they are unable to agree, any party may apply to the Court for appointment of a mediator in conformity with Rule 1.720 (j), Fla. R. Civ. P. The lead attorney or party must file and serve on all parties and the mediator a Notice of Mediation giving the time, place, and date of the mediation and the mediator's name.

C. <u>COMPLETION OF MEDIATION BEFORE CALENDAR CALL</u>

Completion of mediation prior to calendar call is a prerequisite to trial and must be completed no later than **ten (10) days prior to Calendar Call**. If mediation is not conducted, or if a party fails to participate in mediation, the Court may impose sanctions, including monetary sanctions, striking pleadings and witnesses, and dismissal or default without further notice of the Court.

D. <u>OPPOSITION TO MEDIATION</u>

Any party opposing mediation may proceed under Florida Rule of Civil Procedure 1.700(b).

IV. **NON-COMPLIANCE**

**NON-COMPLIANCE WITH ANY PORTION OF THIS ORDER MAY RESULT IN THE STRIKING OF THE PLEADINGS, WITNESSES, OR EXHIBITS, ENTRY OF DEFAULT OR DISMISSAL WITHOUT FURTHER NOTICE OF THE COURT, OR IMPOSITION OF SUCH OTHER SANCTIONS AS IS JUST AND PROPER.**

**DONE AND ORDERED** in West Palm Beach, Palm Beach County, Florida.

50-2025-CA-011907-XXXA-MB    11/18/2025
James Sherman    Judge

50-2025-CA-011907-XXXA-MB    11/18/2025
James Sherman
Judge

A copy of this Order has been furnished to the Plaintiff. The Plaintiff shall serve this Order to the Defendant(s) in compliance with Administrative Order 3.110 (amended).

# ADA NOTICE

Case No. 50-2025-CA-011907-XXXA-MB

This notice is provided pursuant to Administrative Order No. 2.207-7/22

**"If you are a <u>person with a disability</u> who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact William Hutchings, Jr., Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

**"Si usted es una <u>persona minusválida</u> que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con William Hutchings, Jr., 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711."**

**"Si ou se yon <u>moun ki enfim</u> ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte William Hutchings, Jr., kòòdonatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telefòn li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711."**

Filing # 235829501 E-Filed 11/14/2025 02:12:57 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

L.D., on behalf of D.D., a minor,                                    CASE NO:

        Plaintiffs,

vs.

PALM BEACH COUNTY SCHOOL BOARD,

        Defendant.

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiffs, L.D., on behalf of D.D., a minor, by and through the undersigned counsel, and in accordance with the applicable Florida Rules of Civil Procedure, and hereby sues Defendants, PALM BEACH COUNTY SCHOOL BOARD and alleges as follows:

### PARTIES

1. The Plaintiff, L.D., is the natural parent of D.D., a disabled minor, resides in Palm Beach and is otherwise *suri juris*.

2. The Plaintiff, D.D., is a seven (7) year old disabled child, who resides in Palm Beach County, Florida and is a student within the Palm Beach County Public School system.

3. The Defendant, School Board of Palm Beach County, Florida (herein after "Board" or "district") is a corporate body and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Palm Beach County Public Schools. The Board receives local, state and federal funding for the education of children with disabilities. The Board meets the definition of a public entity under 42 U.S.C. § 12131.

### JURISDICTION AND VENUE

4. This is an action for damages in excess of fifty thousand dollars ($50,000.00), exclusive of

interest and costs, and otherwise within the jurisdictional limits of this Court.

5. Venue is proper in Palm Beach County, Florida, because the incident from which this cause of action arises occurred in Palm Beach County, Florida.

## GENERAL ALLEGATIONS

6. This action arises out of the gross negligence and other acts of misconduct against D.D. which resulted in serious neglect and injury to D.D.

7. At all times material, Plaintiff was a student of Palm Beach County Public Schools.

8. D.D. is a student with a disability that the district has recognized is in need of Exceptional Student Education (ESE) services. He has an individualized education plan (IEP).

9. D.D. has been diagnosed with an Autism Spectrum Disorder. He has an IEP for a developmental delay and a severe language impairment. D.D. is minimally verbal. He communicates using one to two word phrases. D.D. cannot carry on a conversation or communicate as his same age peers can.  He cannot communicate with parents about what happens at school. He also needs assistance with toileting and his IEP provides for a toileting schedule.

10. During the 2024-2025 school year, D.D. was six years old, and was in a general education kindergarten classroom at Pierce Hammock Elementary School. The kindergarten classroom had one teacher and three or four paraprofessionals who moved in and out of the classroom throughout the day. No paraprofessional was assigned to support D.D., specifically or individually.

11. The student's IEP identified that the student needed the following support as follows: "Personal assistance or supervision in activities of daily living, self care and self management for most or all of the day, Direct specialized instruction and/or curriculum for the majority of learning activities, Supervision to ensure physical safety during the majority of activities."

12. The parents were able to secure a private Board Certified Behavior Analyst (BCBA) and Regisered Behavior Therapist (RBT) who provided one to one support to D.D. throughout the school day.

13. In October, the family's insurance stopped covering the services finding that it was a duplication of services because the school was providing the same supports. The school was not providing the same support.

2

14. When private insurance stopped covering the one to one support, the family asked for an increased level of support when the RBT and BCBA had to leave, but this request was repeatedly denied by the district.

15. The IEP recognizes the student's need for adult supervision for self-care tasks and self-monitoring, but one to one support was repeatedly denied. The parents continued to express concern that there was not sufficient support.

16. The classroom teacher reported that the student was struggling, and the paraprofessionals expressed how much they missed the RBT/BCBA, yet no additional support was provided and the teacher stopped communicating with the family. It is unknown if this was at the direction of the school administration.

17. On Friday, February 21, 2025, D.D. came home from school with two sets of soiled and wet clothing and wearing unfamiliar clothing. No explanation was given.

18. On Monday, there was no school, so on Tuesday, February 25, 2025, D.D. was sent to school with a new extra set of clothing and a message was sent to the classroom teacher to let her know. Her response was "Thank you," with no further response.

19. On Wednesday, February 26, 2025, L.D. was stopped in the hallway by Ms. Gilbert, a person who was unfamiliar to her, and was asked where the student's RBT was and when they were coming back because D.D. takes too long in the bathroom. Ms. Gilbert also suggested that the family talk to the classroom teacher to update the student's IEP.  The conversation was strange.

20. On Thursday, February 27, 2025, the family, through the local rumor mill and not from school, found out that their son had been left alone and partially naked in a bathroom for over an hour.

21. It was discovered that D.D. was left in a single use bathroom by a staff member, Ms. Leyendecker, and then forgotten about.

22. Another employee, Ms. Lindo, heard D.D. in the bathroom, hysterically crying. She found him alone and half naked in the bathroom.

23. No one knew how long he had been left alone.

24. The initial reports were that he was there alone for up to two hours.

25. When Mrs. Lindo tried to report the incident, she was told by Mrs. Schreiber, the principal, that if she had reported the incident, she would lose her job. No reports were filed by

anyone on the school campus even though they are all mandatory reporters. Fla. Stat. 39.201 (2025). Per Palm Beach County School Board Policy 5.30—Reporting Child Abuse, Abandonment, or Neglect; all district employees, including teachers, administrators, and support staff, are mandated reporters. They must immediately report any suspected child abuse, abandonment, or neglect to the Florida Department of Children and Families (DCF). If a school employee is the suspected offender, employees must follow the same reporting procedures and immediately notify the Office of Professional Standards (OPS).

26. Camera footage revealed and confirmed the extreme neglect and child endangerment.

27. The trauma this student incurred is unknowable but clear signs have already been seen by his parents.

28. It was later learned that Ms. Leyendecker is a staff member assigned to the cafeteria during D.D.'s lunchtime. It is unknown why she left this six-year-old alone in the restroom. It appears as if she forgot about him. It is also unknown why the classroom teacher and the three or four paraprofessionals assigned to that classroom failed to notice a six-year-old missing for over an hour.

29. Upon information and belief when the students line up and walk back to the classroom after lunch no head count was completed and no adult noticed that D.D. was missing.

30. Had D.D. not been heard screaming; it is unknown how long he would have been in the bathroom before anyone noticed he was missing. He probably would not have been discovered until his parents came to pick him up at the end of the day.

31. Ms. Cindy Myers, the district ESE coordinator, was the person who ended up changing the student. She did not report this incident of neglect even though she is also a mandatory reporter.

32. The parents reported this incident to the district who immediately shared their complaint with the school's principal. It is understood that Ms. Myers was the person who took it upon herself to share the parents' complaint with the principal. The principal in response accused the parents of making "false accusations".  The sharing of the complaint appears to be an intentional act of retaliation, and it created a hostile environment for the student and his parents.

33. The school also shut down all communication with this family and accused the parents of lying.

34. A review of the video confirms that this incident occurred. The parents were not lying and the principal's accusation in light of what occurred on her campus is shocking.

35. On February 21, 2025, D.D., a six year old functionally non-verbal autistic student, was left alone in a single person bathroom, without any clothes, for over an hour. The parents' fears that there was not sufficient support for D.D. came true.

36. D.D. was taken to a bathroom to be changed and left in the bathroom without any clothes.

37. The adult who took him to the bathroom simply forgot about him and the staff required to look after this child, and to educate this child did not notice that he was missing.

38. He was neglected and left vulnerable for an extended period.

39. It was not until a different adult (the office secretary) heard him crying that he was discovered alone and naked. It is clear that everyone required to take care of this child, failed in their duty and exposed this child to embarrassment, distress and harm.

40. The neglect and injury occurred while D.D. was on the school campus and while in the care, custody and control of the Board's employees, agents and teachers.

41. The impact of this incident is still seen in D.D. today.

42. The Board's employees, agents and teachers did nothing when the student was discovered alone in the bathroom, half naked.

43. The Board's employees, agents and teachers did not inform the parents of the incident.

44. The employees did not report this matter to the Department of Children and Families (DCF) even though they are mandatory reporters.

45. The injury was discovered by D.D.'s parents through the rumor mill in the neighborhood.

46. The Board's employees, agents and teachers first stated that they had no idea whether D.D. was left alone in the bathroom and called the parents liars.

47. D.D. should never have been left unsupervised for any period of time during the school day.

48. Prior to this incident the parents were begging for more support for D.D. These requests were all denied by the district.

49.  Had more supports been put into place, this incident would never have occurred.

50. At no time after this incident did the Board place any of the staff involved on probation, provide training about appropriate interventions, safety, or the like, place the staff under

5

supervision or take any steps to protect the students over whom these staff members had control and authority over disabled students, most of whom are non-verbal. The Board also did not provide training to any other employees involved with this incident, including the school administration.

51. When the parents made a report of what occurred to the district, the school retaliated and created a hostile school environment for the student and his family.

52. The family asked for a transfer to a new school. They also requested an emergency IEP meeting, however, it took a few weeks for this IEP meeting to be scheduled and as a result D.D. was out of school for over a month.

53. The Board knew or should have known that D.D. should not be left unsupervised while on school campus.

54. The Board knew or should have known that D.D. required proper supervision in order to protect and maintain his safety while on school campus.

55. The Board failed to provide the requisite level of support, training and interventions to ensure D.D. would be safe while on the school campus.

56. The gross negligence of the Board resulted in gross neglect and injury, as well as emotional injury.

57. The Board, as the operator and owner of Pierce Hammock Elementary School, had a duty to operate said school with reasonable care and for the protection and safety of those students who were actively attending said institution on or about the date of the incident at issue in this case.

58. The Plaintiff has complied with all the conditions precedent to maintaining this action, including statutory notice to the Defendant Board pursuant to Florida Statue section 768.28. A copy of which is attached hereto as Exhibit 1.

59. Plaintiff, by and through his parents, has engaged the law firm of Langer Law, P.A. to represent him in this action, who are obligated to pay a reasonable fees for their services and costs related thereto.

<u>COUNT I</u>

<u>NEGLIENT SUPERVISION</u>

60. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 59 of the Complaint as if fully set forth herein.

61. Defendant had a legal duty to supervise D.D. while he was on the school campus.

62. Defendant breached such duty by failing to supervise D.D. in a manner that protected him from suffering severe neglect and being left alone, half naked in a bathroom.

63. The employees, teachers, administration, aides and other staff, and the Defendant Board's agents, employees and/or teachers were negligent in their duty to supervise the Plaintiff.

64. As a direct and proximate cause of the negligent supervision, the Plaintiff suffered severe injuries.

65. The injuries were entirely preventable.

66. The Defendant was negligent in the manner that D.D. was supervised while on the school campus.

WHEREFORE, the Plaintiff, L.D. on behalf of D.D., a minor, sue the Defendant for damages in excess of $50,000 including pre and post judgment interest to the extent allowed by law, plus costs and interest, and demands a jury trial of all triable issues.

## COUNT II
## NEGLIGENCE

67. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 59 of the Complaint as if fully set forth herein.

68. At all times material the Board owed a duty to D.D. to use reasonable care to ensure D.D.'s safety, care, health, and well being by hiring, retaining, assigning, supervising and training its faculty who were employed and/or acted as agents in supervisory roles, such as D.D.'s special education teacher.

69. At all times material, the Board was in *loco parentis* and was held to a standard of reasonable protection for the minor disabled child Plaintiff who was its student.

70. At all times material, the Board owed a duty to D.D. to investigate and supervise its teachers, agents and employees, especially those staff members working directly and indirectly with disabled students, particularly those who are most vulnerable, the non-verbal and intellectual disabled students.

71. At all times material, the Board had a duty to ensure that the appropriate interventions, accommodations, services, and supports were in place for this disabled student.

72. At all times material, the Board had a duty to ensure that the staff working with and having

7

contact with D.D. were trained on his disability and his needs and that the appropriate services, interventions and supports were in place to ensure D.D.'s safety on school campus.

73. At all times material, the Board breached these duties in one or more of the following ways:

    a.  Failing to provide a safe environment for D.D. where he would be supervised at all times in a safe and secure manner by teachers, agents and/or employees of the Board;

    b.  Failing to provide policies and procedures to protect its students from gross neglect such as occurred in this matter;

    c.  Failing to have policies in place that prohibit teachers from leaving students unsupervised;

    d.  Failing to provide reasonable investigation and reporting of teachers and students to prevent and/or detect negligent contact by teachers and other support staff;

    e.  Failing to provide the appropriate services, supports, interventions and/or training for staff interacting with a disabled student;

    f.  Retaliation; and

    g.  Attempting to cover up such acts after they occurred.

74. As a further direct and proximate cause of the negligence of the Board, D.D. was subjected to gross neglect which caused D.D. to suffer great harm, as well as psychological injures and suffering, increased problem behaviors, anxiety, loss of sleep and loss of trust and loss of the capacity for the enjoyment of life.

75. As a further direct and proximate cause of the negligence of the Board, D.D. has incurred psychological expenses for the treatment of his injuries and will incur such expenses in the future.

WHEREFORE, the Plaintiff D.D. sued defendant Palm Beach County School Board for damages in excess of $50,000.00 including pre and post judgment interest to the extend allowed by law, plus costs and interest, and demand a trial by jury for all triable issues.

COUNT III

NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

76. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 59 of the Complaint as if fully set forth herein.

77. At all times material, the Board owed a duty to the public and specifically to D.D., a disabled minor, to employ qualified and competent teachers and aides to work within its schools, and specifically within its segregated and clustered programs. This duty is even greater in the context of a public school where parents have a trust and faith in the leaders, a reliance on those who are chosen to lead, and the school acts in *loco parentis*.

78. The Board has an extra duty to protect students with disabilities and receives local, state and federal monies to do the same. This duty includes having the appropriate services, supports, interventions, and trained staff in place to meet the unique needs of each disabled student, including D.D.

79. At all times material, the Board owed a duty to the public and Plaintiff, D.D., to make an appropriate investigation of its employees, servants, and/or agents who were in or would be placed in a position to come into contact with minor and disabled students of the Board.

80. At all times material, the Board owed a duty to Plaintiff, D.D. to terminate any and all employees, servants and/or agents that it knew or should have known had engaged or sought to engage in neglectful conduct with its minor disabled students.

81. At all times material, the Board owed a duty to Plaintiff, D.D. to make an appropriate investigation of its programs to ensure that students with disabilities were receiving the appropriate services, supports, accommodations and interventions to ensure these students' safety on school campuses.

82. At all times material, the Board owed a duty to Plaintiff, D.D. to make an appropriate investigation of its employees, servants, and/or agents who were in or would be placed in a position to come into contact with minor and disabled students, and to ensure that the disabled students' individual needs were being met.

83. At all times material, the Board owed a duty to Plaintiff, D.D. to terminate any and all employees, servants, and/or agents that it knew or should have known had engaged or sought to engage in neglectful behavior.

84. At all times material, the Board owed a duty to the public and Plaintiff, D.D. to train its employees, servants, and/or agents to identify when neglectful acts occur, are ongoing or have potential to occur, and report it accordingly.

85. Defendant knew or in the exercise of reasonable care should have known that not properly supervising its staff and/or without the proper supports, interventions, accommodations or

services, that disabled students were at grave risk of being neglected and as a result injured.

86. At all times material, the Board breached its duty to Plaintiff, D.D. in the following ways:

    a. failing to hire competent and qualified employees, servants, agents and/or agents without proclivities to engage in neglectful acts against its minor disabled students;

    b. failing to hire competent and qualified employees, servants, and/or agents with knowledge and training needed to accurately identify neglect of disabled students, especially non verbal students, and act accordingly;

    c. failing to train its employees, servants and/or agents of the unique individual needs of D.D.;

    d. failing to train its employees, servants and/or agents to identify and report when a member of the Board staff is attempting to engage in and/or is engaging in neglectful acts against its minor disabled students;

    e. failing to supervise school staff in a proper manner to prevent the neglect and injury of its minor disabled student D.D.;

    f. failing to train its employees, servants and/or agents to report neglectful acts by other employees, servants, and/or agents;

    g. failing to terminate or reassign those employees, servants, and/or agents who were aware of these negligent actions but did nothing to stop or report it, or worse yet, support such staff, after the fact, once the neglect came to light;

    h. failing to terminate and/or provide remedial measures to ensure the safety of students once the Defendant Board, knew or should have known of the neglectful conduct;

    i. failing to procure or develop policies and procedures to prohibit neglect by special education teachers;

    j. failing to procure or develop policies and procedures to enable employees, servants and/or agents to report neglect in a manner that protects them from retaliation.

87. As a direct and proximate result of the Board's negligence, D.D. was left unsupervised and this neglect caused serious injury to D.D.

88. As a direct and proximate result of the negligence of the Board, D.D. was neglected causing him to suffer mental pain, anxiety, fear of attending school, increased problem behaviors, and loss of faith, sleep and capacity for the enjoyment of life.

10

89. As a further direct and proximate cause of the negligence of the Board, D.D., has incurred past psychological expenses for the treatment of his injuries and will incur such expense in the future.

WHEREFORE, Plaintiff D.D., sues defendant Board, for damages in excess of $50,000.00 including pre-judgment and post judgment interest to the extent allowed by law, plus costs and interest, and demand a trial by jury for all triable issues.

COUNT IV

42 U.S.C. SECTION 1983

90. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 59 of the Complaint as if fully set forth herein.

91. At all times material, the Fourteenth Amendment provides Plaintiff a right as a public school student to personal security and bodily integrity and Equal protection.

92. Defendant, Board, was a state actor acting under the color of state law.

93. Defendant, Board, subjected D.D. to violations of his right to personal security and bodily integrity and Equal Protection by:

   a. Failing to adequately investigate misconduct and act accordingly in removing those from positions of authority over its minor, nonverbal, disabled students;

   b. Failing to adequately train all staff and administrators to ensure that D.D.'s individualized needs were met to ensure his safety from neglect while on the school campus;

   c. Failing to adequately supervise employees and/or agents of the Board, to ensure that disabled student's individual needs were being met and that those same students were not able to be abused and/or neglected;

   d. Manifesting deliberate indifference to the abuse and neglect of D.D.; and

   e. Manifesting a deliberate indifference to the retaliation that D.D. and his parents were subjected to for bringing the abuse and neglect to the attention of the Board's employees.

94. Defendant, Board, has and/or had unconstitutional customs or policies of:

   a. Failing to investigate evidence of tortious misconduct against minor disabled students;

   b. Failing to adequately train and supervise Board employees with regard to

11

         maintaining, preserving and protecting students with disabilities from violations of their right to personal security, bodily integrity and Equal Protection.

95. Defendant, Board's policies and practices constitute disparate treatment of and deliberate indifference towards disabled students.

96. As a direct and proximate result of the Board's unconstitutional customs and practices, D.D. was exposed to neglect and injury which caused great injury and psychological harm, anxiety and trauma.

97. As a further direct and proximate cause of the Board's unconstitutional customs and policies, D.D. has incurred past psychological expenses for the treatment and will incur such expenses in the future.

WHEREFORE, Plaintiff D.D. sues defendant Board for damages in excess of $50,000.00 including prejudgment and post-judgment interest to extent allowed by law, plus attorneys' fees and costs and interest and demands a trial by jury for all triable issues.

COUNT V

RETALATION

98. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 59 of the Complaint as if fully set forth herein.

99. The Plaintiff engaged in legally protected activity, when his neglect, through his parents, was reported to the administration of the school.

100. The Defendant, Board knew that D.D. and his parents have the right to report such illegal acts by its teachers, employees and/or agents and further have the right to advocate for individualized protections as it relates to being a student identified as having a disability.

101. In response, the Defendant Board initially denied that anything occurred and then called the family liars. The Board also delayed the student's return to school resulting in him missing school.

102. The defendant, Board's actions caused harmed to the Plaintiff and his parents.

      WHEREFORE, Plaintiff D.D. sues defendant Board for damages in excess of $50,000.00 including prejudgment and post-judgment interest to extent allowed by law, plus attorneys' fees and costs and interest and demands a trial by jury for all triable issues.

12

COUNT VI

FALSE IMPRISONMENT

103. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 59 of the Complaint as if fully set forth herein.

104. On February 21, 2025, the Defendant confined D.D. without lawful authority, against his will.

105. D.D. was walked to a single person restroom, his clothing was removed, he was told not to leave the bathroom and then he was left alone.

106. The use of the single person bathroom was done without the consent or knowledge of his parents.

107. The defendant's actions were intentional.

108. D.D. was unable to leave not only because of his age and capacity but also because his clothing was removed and he was left naked from the waist down, depriving D.D. of personal liberty or freedom of movement.

109. D.D. was aware of his imprisonment because he cried for over an hour and knew he could not leave the bathroom without clothing.

110. D.D. also could not seek help because he is a non-verbal autistic child.

111. As a direct and proximate result of the Defendants' acts, D.D. has suffered severe mental and emotional harm; pain and suffering; mental anguish; inconvenience; humiliation; loss of capacity for the enjoyment of life; and loss of his liberty and freedom without due process.

WHEREFORE, the Plaintiff demands economic and noneconomic damages; punitive damages, reasonable attorney fees; and costs.

**DEMAND FOR JURY TRIAL**

Plaintiff, D.D., hereby demands a trial by jury on all issues so triable.

Dated this 14th day of November, 2025.

BY:    LANGER LAW, P.A.

13

s/ Stephanie Langer, Esq.
Stephanie Langer, Esq.
Fla Bar no: 149720
15715 S. Dixie Hwy., Suite 205
Miami, Florida  33157
Tel: 305/570.0940 | fax: 305/204.9602
Email Slanger@langerlawpa.com
*Attorneys for Plaintiffs*